Leo J. **FREGEAU**, Plaintiff,

v.

Gerald J. **MOSSINGHOFF**, Defendant.

Civ. A. No. 81–1397.

United States District Court,
District of Columbia.

Sept. 10, 1984.

Robert A. Vanderhye, Washington, D.C., for plaintiff.

John W. Dewhirst, Sol., U.S. Patent and Trademark, Washington, D.C., for defendant.

## MEMORANDUM

JOHN GARRETT PENN, District Judge.

The plaintiff filed this case, pursuant to 35 U.S.C. § 145, to authorize the defendant, Commissioner of Patents, to issue Letters Patent on certain claims presented to the Board of Appeals of the United States Patent and Trademark Office. The case came before the Court for trial and on August 31, 1984, the Court filed an Order entering judgment for the defendant and dismissing the case with prejudice. This Memorandum constitutes the Court's findings of fact and conclusions of law. *See* Fed.R.Civ.P. 52.

### I

On May 17, 1978, the plaintiff filed United States Patent Application Serial No. 906,790 for MAGNET BEVERAGE TREATMENT, a device which was purportedly invented by him. The application contained the Claims to which plaintiff believed himself to be entitled, those Claims being numbered 21 through 30. The Application for Letters Patent was examined by the Examiner in charge thereof who thereafter rejected the Claims on July 31, 1979.

On August 24, 1979, the plaintiff filed an appeal to the Board of Appeals of the United States Patent and Trademark Office (Board), and on March 31, 1981, the Board rendered a decision affirming the rejection of Claims 21 through 30, and initiating other rejections of Claims 21, 22, 25, 27, 28 and 30. Plaintiff filed a Request for Reconsideration of the Board decision and on May 22, 1981, the Board granted reconsideration, reviewed the previous decision, and denied it without making any change in the original opinion.

Plaintiff alleges that the decision of the Board adjudging that the plaintiff is not entitled to Letters Patent for the invention as recited in Claims 21 through 30 was erroneous and contrary to law. Specifically, plaintiff alleges that the Board erred in affirming the rejection of Claims 21 through 30 under 35 U.S.C. § 101 as inoperative. That section provides:

Whoever invents or discovers any new and useful process, machine, manufacturer, or compensation of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

Plaintiff contends that the Board failed to give proper consideration to the evidence presented by him during the prosecution of the application, that the Board alleged deficiencies in plaintiff's evidence previously never alleged by the Patent and Trademark Office and without a basis in fact and law, and that the Board refused plaintiff's proffer to physically demonstrate the invention to the Board.

Plaintiff further alleges that the Board erred in affirming the Examiner's rejection under 35 U.S.C. § 112, as it relates to the "how-to-use" requirement of the patent laws. The first paragraph of Section 112, which is pertinent here, provides:

The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or

with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention. Plaintiff contends that the Board erred in concluding that the specification does not establish with certainty that the claimed invention will operate in the manner intended, and that the Board failed to take cognizance of the plaintiff's evidentiary proofs directly on point.

The plaintiff further contends that the Board erred in rejecting Claims 21 through 30 as obvious under 35 U.S.C. § 103 in view of a publication identified as "King, Pyramid Energy Handbook, Warner, New York," making reference to the specific pages thereto, that the Board further erred in sustaining the rejection of Claims 23, 24, 26 and 29 as obvious under Section 103 over a reference entitled "Davis and Rawls Magnetism and its effects on the living system, 1964, Exposition Press, Hicksville, New York, making reference to certain pages thereof, that the Board erred in affirming the rejection of Claims 23, 24, 26 and 29 under Section 103 over a reference identified as French Patent 1,603,804 dated July 1971 and that the Board erred in instituting a new rejection under Claims 21, 22, 25, 27, 28 and 30 based upon the French Patent. The plaintiff claims that the Board further erred in sustaining the Examiner's rejection of Claims 27 and 28 under Section 103 as unpatentable over "like products". Section 103 provides:

A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

Plaintiff contends that the Board erred as a matter of law in suggesting that one of ordinary skill in the art would rely upon the credibility of the King reference, and in finding that one of ordinary skill in the art would consider the differences between the claimed invention and King obvious. Plaintiff also contends that the Board erred as a matter of law in finding that one of ordinary skill in the art would give credibility to the Davis and Rawls reference, and in finding that the differences between the invention claimed would be obvious to one of ordinary skill in the art over the Davis and Rawls publication. With respect to the French Patent issue, plaintiff contends that the Board failed to give proper consideration to the evidence presented by the plaintiff with respect to the applicability of the French Patent, and erred in holding that differences between the French Patent and the invention as recited in Claims 21 through 30 were obvious to one of ordinary skill in the art. Plaintiff also contends that the Board erred in failing to consider his evidence which he alleges unequivocally established that the products recited in Claims 27 and 28 have numerous differences in physical properties and flavor over "like products" and applied an inappropriate legal standard.

Finally, the plaintiff contends that the Board erred in affirming and instituting rejections under Claims 21 through 30 that were completely inconsistent with each other and which failed to properly consider the evidence presented by plaintiff regarding the unexpected advantageous results achieved according to the claimed invention.

The Board found that Claims 21 and 27 are representative of the appealed claims. "In those Claims the plaintiff stated as follows:

21. A method of increasing the specific gravity of a liquid selected from the group consisting essentially of ethyl alcohol containing liquids, fruit juices, coffee, tea, extruded soy protein, and chicken soup, said method consisting of essentially of the steps of

establishing a magnetic field with a tubular permanent magnet with a central

bore, and having opposite radically spaced first and second pole portions of opposite polarity, and a minimum strength effective to increase the specific gravity of the liquid, and

passing the liquid through the field so that the specific gravity thereof is increased.

27. A beverage selected from the group consisting essentially of ethyl alcohol containing liquids, fruit juices, coffee, tea, extruded soy protein, and chicken soup, the beverage having enhanced flavor, obtained by practicing the method steps consisting essentially of establishing a substantially constant magnetic field with a minimum strength of about 3,000 Gauss, and passing the beverage through the field so that the flavor thereof is enhanced.

The Examiner rejected all appealed claims under Section 101 on the ground that one reasonably skilled in the art reading the instant specification would consider the teachings therein highly incredible and unbelievable. The Board noted that counsel for the plaintiff acknowledged that the invention is of such a nature that the Examiner's requirement for evidence of operability is reasonable, i.e., counsel agreed that the Examiner had established a prima facie case of lack of operativeness. The Board carefully reviewed the entire record including appellant's declaration evidence and found, like the Examiner, that it failed to demonstrate operativeness of the claimed method. The Board considered the matters set forth in the Lindsay declarations. Dr. Robert C. Lindsay was an expert witness called by the plaintiff who presented declarations before the Board and who testified before the Court. Dr. Lindsay, it was represented, was disinterested and had impeccable credentials in the field having worked in the field of food science for over 18 years, having received a Ph.D in Food Science, having authored or co-authored more than 100 publications on scientific subjects related to the chemistry and evaluation of food flavor, and having chaired the Flavor Subdivision of the American Chemical Society and the Wisconsin Section of the Institute of Food Technologists. The Board found that the experimental data furnished by the plaintiff was limited to a relatively small number of samples especially in the case of the physical properties tests set forth in the first Lindsay declaration. Moreover the Board found that the differences in physical properties observed were at best minimal and did not warrant a conclusion that they were the result of any magnetochemical affect rather than other causes. The Board further found that one could not unequivocally conclude from the test data that the magnetic field somehow effected the density and the compressibility of the tested liquids and that this could be translated as resulting in subtle changes in flavors of the treated beverages observed during experimental testing. Finally, the Board concluded that it regarded the present invention as being contrary to generally accepted scientific principles and that the declarations of the plaintiff and Lindsay failed to persuade the Board otherwise. The Board found that the Examiner had a reasonable basis for questioning appellant's allegations of utility as to the full scope of the claimed terminology and it agreed with the Examiner that the plaintiff had failed to present "clear and convincing" evidence of operativeness for the invention as broadly disclosed and claimed. For the above reasons, the Board found that the Examiner had properly rejected the Claims pursuant to 35 U.S.C. § 101.

Turning to the Claims under Section 112, the Board noted that the Examiner had rejected all the Claims under that section as "vague, indefinite and unduly broad." The Board affirmed the Section 112 first paragraph rejection insofar as it related to the "how to use" requirement of the statute. The Board was cognizant that it is the function of the specifications and not the Claims that set forth the practical limits of operation of an invention and that accordingly one looks to the specification and not the Claims to find out how to practice the invention they define, however, the Board noted that a specification that does not

establish with certainty that the claimed invention will operate in the manner intended necessarily fails to satisfy the "how to use" requirement of the statute. The Board however rejected other conclusions of the Examiner relating to Claims asserted under the second paragraph of Section 112.

Finally, the Board noted that the Examiner had rejected all Claims as obvious under 35 U.S.C. § 103 in view of King and that the Examiner had additionally rejected Claims 23, 24, 26 and 29 as obvious under Section 103 in view of Davis. The Board sustained the rejections made by the Examiner for the reasons given in his answer and also rejected the same Claims as obvious under Section 103 in view of the French Patent. The Board noted that [w]hile the French Patent does not specifically teach that the magnetic treatment would change the flavor or physical properties of the treated liquid, it does teach that the physiological characteristics of liquid products intended to be administered to the human body are changed" when a physiological fluid substance is subjected to a magnetic field to intensify the effect of the fluid on the human body. The Board set forth the above and additional reasons for rejecting all the Claims made under Sections 101, 103 and 112 with the one exception noted above.

## II

■ A plaintiff in an action brought pursuant to 35 U.S.C. § 145 has a heavy burden. "Because the 'Patent Office [is] an expert body preeminently qualified to determine questions of this kind' ..., its conclusions are entitled to a strong presumption of validity." *Pro-Col Corp. v. Commissioner of Patents*, 141 U.S.App.D.C. 142, 143, 436 F.2d 296, 297 (1970) (citations omitted). "In these circumstances [the court is] is authorized to reverse the decision ... only if the Patent Office did not have 'a rational basis for [its] conclusions' ... or if [the plaintiff] presented new evidence ... which leads to a 'thorough conviction' that [the plaintiff] should prevail."

*Id.*, (citations omitted). "In trials *de novo* under 35 U.S.C. § 145, great weight attaches to the expertise of the Patent Office and its findings ... will not be overturned unless new evidence is introduced which carries a 'thorough conviction' that the Patent Office erred." *DeSeversky v. Brenner*, 137 U.S.App.D.C. 369, 370, 424 F.2d 857, 858 (1970). "Deference is owed to the findings of the Patent Office." *Puharich v. Brenner*, 134 U.S.App.D.C. 399, 402, 415 F.2d 979, 982 (1969).

The plaintiff and Dr. Robert Lindsay were the only witnesses called in the trial. The defendant chose to rely on the record and his cross-examination of the above two witnesses. Declarations by the plaintiff and Dr. Lindsay had been submitted to and considered by the Patent Office and the Board. Although no new witnesses were called at the trial, the plaintiff contends that he did submit "new" evidence at the trial and so much is conceded by the defendant. The defendant takes the position, however, that the new evidence does not change the result in this case and is clearly insufficient to overturn the decision of the Patent Office and the Board. It appears that most of the evidence before the Court was also before the Board. The Patent Office and the Board have the expertise in this area and as noted, the plaintiff has a heavy burden of proof. After considering the entire record in this case, the Court cannot find that there is "clear and convincing" evidence that the Patent Office and the Board erred in rejecting the plaintiff's application. To state it differently, the Court is not "thoroughly convinced" that the Patent Office erred.

On the issues of usefulness, there appears to be little evidence to support plaintiff's claim, and as defendant points out, few beverages were involved in the testing while the Claims encompass a large number of beverages. The subjective evaluations made by Dr. Lindsay are not persuasive. While Dr. Lindsay testified that there had been enhancement of flavor by subjecting certain liquids to the device, he admitted that any changes were only "sub-

tle". In the Addendum Report of November 18, 1981, Dr. Lindsay noted that "the mode of action of the device is also a combination of physiochemical actions which result in *subtle* flavor modifications rather than drastic modifications." Plaintiff Exhibit 7 at 2 (emphasis the Court's). He noted that "[f]ood quality and preferences for food ... are greatly dependent on perceptions of subtle flavor characteristics that are extremely difficult to clearly describe or define" and that the "net influence of the magnetic beverage treatment device ... [is such that it] has been difficult to convincingly establish its efficacy". *Id.* The above presents the gist of the results of the subjective test and the Court finds that such evidence is insufficient to overturn the decision of the Patent Office.

Similarly, the objective test reflects that any changes in the physical properties of the tested substances are "at best minimal". The Board found that the observed differences in viscosities were practically nil and Dr. Lindsay offered nothing to dispute that finding when he testified. The evidence relating to pH data was inconclusive as to the effect of the device, as was the other evidence relating to the purported objective changes. Moreover, the plaintiff "did not show an acceptance of his hypothesis by a substantial section of the scientific community, nor did he present the kind of evidence, such as duplication of the experiment, that is so persuasive on its own as to make it unreasonable to reject [his] claims." *Puharich v. Brenner, supra,* 134 U.S.App.D.C. at 402, 415 F.2d at 982. The Court finds that the plaintiff has failed to demonstrate that the device is operative or useful and thus finds that he has clearly failed to demonstrate by clear and convincing evidence that the Patent Office and the Board erred.

■ With respect to whether the invention was obvious, the Court only notes that the Board has carefully considered that matter and resolved it against the plaintiff. Nothing in the record leads to a "thorough conviction" that the Patent Office and the Board were wrong.

In view of the above it is clear that the defendant is entitled to judgment and entitled to have this case dismissed. An appropriate Order has been filed.